UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LYNDA GEBERT,

        Plaintiff,

v.                                                            Case No. 13-C-170

THRIVENT FINANCIAL FOR LUTHERANS
GROUP DISABILITY INCOME INSURANCE PLAN, et al.,

        Defendant.

## DECISION AND ORDER DENYING MOTIONS TO COMPEL
## AND GRANTING MOTION FOR LEAVE TO AMEND

        In this action Plaintiff Lynda Gebert challenges the termination of her long term disability benefits under her former employer's disability insurance plan. The defendants include Thrivent Financial for Lutherans (her former employer), the Plan sponsored by Thrivent, and Hartford Life and Accident Insurance Company, which issued the group policy that funded the disability benefit provided by the Plan. The action arises under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., and the court has jurisdiction under 28 U.S.C. § 1331.

        Three motions are currently pending. Two of them pertain to Plaintiff's efforts to expand the scope of discovery beyond the administrative record. The third motion is for leave to file an amended complaint that differs from the original complaint in that Plaintiff now disputes the defendants' contention that the plan administrator is granted discretion over the decision to grant or deny benefits. For the reasons that follow, the motions to compel will be denied and the motion for leave to amend will be granted.

**I. Motions to Compel**

In ERISA actions in which the plan administrator is granted broad discretion to decide claims for benefits, review by a federal district court is typically limited to the administrative record. Judicial review in such cases is deferential, subject to the arbitrary and capricious standard, and discovery is generally not allowed. *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 629-30 (7th Cir. 2004). "Deferential review of an administrative decision means review on the administrative record." *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection*, 195 F.3d 975, 981-82 (7th Cir. 1999). In her original complaint, Plaintiff seemed to concede that the plan administrator was afforded broad discretion to determine benefit claims. She alleged that Hartford "had been delegated sole authority to determine participants' eligibility and entitlement to benefits under the Plan and to interpret and determine the provisions of any insurance policy issued in connection with the Plan." (Compl. ¶ 4.) Plaintiff also alleged that the defendants' decision denying her benefits was "arbitrary, capricious and without substantial evidence." (*Id.* ¶ 20.) Despite her apparent concession that the standard of review was deferential, Plaintiff nevertheless sought discovery (via two similar motions to compel) relating to the insurer's claims management procedures, its independent medical review process and the results of those reviews, and documents detailing any procedures the insurer used in denying benefits. Plaintiff alleged that her discovery requests were reasonable in light of Hartford's apparent conflict of interest. Defendants oppose the motions on the grounds that review should be limited to the administrative record and that the discovery Plaintiff seeks is both irrelevant and burdensome.

Courts have long recognized that a conflict of interest may exist when an insurer acts both as the benefits administrator and benefits payer. In *Met. Life Ins. Co. v. Glenn,* the Supreme Court

2

found that "this dual role creates a conflict of interest; that a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the particular case." 554 U.S. 105, 108 (2008). Here, the question is to what extent the possibility of such a conflict entitles an ERISA plaintiff to discovery.

Prior to *Glenn,* the answer was "almost never," at least in the Seventh Circuit. In *Semien v. Life Ins. Co. of North America,* the Seventh Circuit restated the general rule that discovery was limited to the administrative record but noted that "limited discovery" may be obtained "in cases where a prima facie showing of impropriety has been made." 436 F.3d 805, 814 (7th Cir. 2006).

> Once an ERISA plan grants a plan administrator discretionary authority to evaluate claims, however, the plan administrator's motivations should not be questioned absent a prima facie showing of some misconduct or conflict of interest. Absent this initial showing, the strong warning of *Perlman* [*v. Swiss Bank Corp. Comprehensive Disability Protection Plan,* 195 F.3d 975 (7th Cir. 2000)] remains intact: "We have no reason to think that [a plan administrator's] benefits staff is any more 'partial' against applicants than are federal judges when deciding income-tax cases." *Perlman,* 195 F.3d at 981.

*Id.*

The *Semien* court referred to such cases as "exceptional cases," and instructed district judges to monitor discovery closely and to employ Rule 11 where necessary to insure that the process was not abused. *Id.* at 815. Since then, the Seventh Circuit has recognized that *Glenn* and other cases "suggest a softening, but not a rejection" of the *Semien* standard. *Dennison v. MONY Life Retirement Income Sec. Plan for Employees,* 710 F.3d 741, 747 (7th Cir. 2013). That standard, even if "softened," required a plaintiff to make some sort of showing that there was something about his

3

case suggestive of a conflict problem or other misconduct. As a court in the Northern District of Illinois recently summarized it:

> in light of *Semien*, as "softened" by *Dennison*, discovery still is not permitted in the run-of-the-mill case in the Seventh Circuit, and the two-part test established in Semien remains instructive. That means that to obtain discovery beyond the claim file in a case governed by the arbitrary and capricious standard, a plaintiff still must identify a specific conflict or instance of misconduct and make a prima facie showing that there is good cause to believe that limited discovery will reveal a procedural defect.

*Warner v. Unum Life Ins. Co. of America,* 2013 WL 3874060, *3 (N.D. Ill., July 26, 2013).

The ultimate question, therefore, is whether this is a "run-of-the-mill" ERISA case or whether the Plaintiff can point to something that raises suspicions. In light of *Dennison,* the onus of making such a showing is perhaps lessened, but there must still be something that serves as a key to open the door to the additional discovery that is not permitted in the typical case.

Plaintiff points to a number of issues that in her view give rise to the need for more discovery. Her arguments may readily be split into "merits" arguments and "process" arguments. On the merits of the disability determination, Plaintiff notes that the administrative record contained several physicians' statements that were suggestive of disability. For example, Dr. Groenewold's statement indicated that Plaintiff had 15-30 migraine headaches per month and was only able to perform very basic care of herself. (ECF No. 13-7 at 643.) The record also contains two statements from Dr. Pinilla indicating that Plaintiff is "currently unable to perform work of any kind" and that the problem was "ongoing, chronic." (ECF No. 13-8, 13-9 at 649.) These records were backed up by others from Dr. Jenkins, who stated that Plaintiff's headaches occurred as often as 30 days per month and were refractory to treatment, except for Botox, which lessened the frequency and severity by 50 percent. (ECF No. 13-12 at 256, 262.)

4

Plaintiff compares her case to the Plaintiff in *Warner*. There, the plaintiff cited "Unum's alleged disregard of her physical therapist's functional capacity evaluation in December 2011 in connection with its decision to reaffirm its denial of benefits in March 2012 [and] its reliance on file reviews by consulting physicians instead of in-person examinations." *Id.* at *3. Here, Hartford preferred the opinion of an independent medical consultant, who concluded Plaintiff was not disabled because despite her repeated complaints of migraines there were no neurological deficits or cognitive impairments noted anywhere in the record. (ECF No. 1-4.)

Although the *Warner* court found the requisite showing to justify discovery, its reasons were based largely on the fact that the insurer, Unum, had been subject to multimillion-dollar fines for its biased claims administration, and it had a documented history of bias in denying claims based on fibromyalgia. 2013 WL 3874060 at *3-4. In light of that history, the court evidently looked askance at Unum's cursory treatment of the plaintiff's physical therapist's opinion. "Unum has enough of a documented 'history of biased claims administration,' *Glenn*, 554 U.S. at 117, that it was working to correct in close enough temporal proximity to its consideration of Warner's benefits claim in 2011 to warrant scrutiny in this case on the conflict of interest issue." *Id.* at 4. "No single factor is determinative, but all of this together suggests this may not be a run-of-the-mill case." *Id.*

Here, there are no similar allegations of government fines or any kind of historical practice of denying migraine claims. It is only in such cases, after all, that the "merits" of the benefits denial should be relevant. It goes without saying that *every* ERISA plaintiff challenging a benefits denial will be able to point to evidence in the medical record supportive of her claim. In such cases there will likely be physician records supportive of disability, and the plaintiff would thus suggest that there is something awry about the insurer's decision to disregard that evidence. But all that

5

establishes in a given case is that the case is a run-of-the-mill benefits challenge rather than one of the rarer cases in which something untoward has gone on due to misconduct or a conflict of interest. In other words, if it were enough to cite medical evidence supportive of a benefits claim, then *every* case would justify opening the doors to discovery. Instead, unless something about the merits of the claim jumps off the page, the mere fact that the plaintiff's own physicians supported her claim is not enough to raise the specter of impropriety.[1]

Plaintiff also makes a process argument. She states that Hartford gave her 180 days to submit information in support of her claim, but it terminated her ability to supply new information before that time period was up. Hartford terminated Plaintiff's long-term disability benefits on December 20, 2011. On January 10, 2012, Plaintiff wrote Hartford to appeal and provided additional medical records. Ultimately Hartford obtained all of Plaintiff's relevant medical records, including the ones detailed above. On March 8, Hartford wrote to Plaintiff indicating that it considered her appeal complete and that it would render a decision within 45 days. In a March 9 phone call with Hartford, Plaintiff indicated she had no further information to provide. Hartford then sent her file to an independent medical reviewer, Dr. Gordon, who concluded Plaintiff could maintain a regular work schedule. Hartford relied on that conclusion and soon denied the appeal. Plaintiff argues that although she had no additional information to provide as of March 2012, she

---

[1] In extreme cases it is conceivable that the outcome of a given claim can be relevant to these questions. For example, when a referee makes a call that is clearly and objectively wrong, disgruntled sports fans often question the referee's motives, the premise being that no one could have reached so erroneous a conclusion without some secret and improper bias. Thus, if an insurer's treatment of a claim was so outlandish that even a lay judge found it suspicious, that could open the door to discovery. Of course, that would also likely justify overturning the decision *without* that discovery as well.

should have been given the chance to rebut Dr. Gordon's opinion that the lack of neurological deficits and cognitive impairment meant she could work.

Based on this timeline, Hartford notes that the 180-day period was the time to *appeal*, not the time to submit information. Hartford received Plaintiff's appeal letter within that time period and then notified her that it considered the appeal complete. Plaintiff did not object. Accordingly, it believes there was no procedural impropriety. I agree with Hartford that no negative inference may be drawn from its treatment of Plaintiff's appeal. In essence, Plaintiff is attempting to punish Hartford for using an independent medical consultant, which it was required to do. Nothing in ERISA requires the insurer to then allow comments on that consultant's report. If the insurer wishes to consider additional information it is free to do so; and if it does not, then it risks a federal lawsuit, which is what happened here. But simply closing the record without additional comment is not enough to warrant any inference that conflict of interest or impropriety factored into Hartford's analysis.

Dr. Gordon's review appears to have turned on the fact that Plaintiff always appeared to have normal cognitive function at her medical appointments and did not suffer from other neurological symptoms such as ataxia (lack of muscle coordination) and hemiparesis (one-sided weakness). Migraines can occur without these symptoms, however, and presumably they can be disabling without those symptoms as well. It is conceivable that in a given case such an argument would be strong enough to overcome even a deferential standard of review. But it does not by itself warrant opening up discovery beyond the administrative record. Assuming the deferential standard applies, as Plaintiff herself assumed when she filed her motions to compel, they are denied. Of

7

course, if Plaintiff prevails on the allegation in her proposed amended complaint that the deferential standard of review does not apply, she may renew her motions.

## II. Motion to Amend

Plaintiff has filed a motion to amend the complaint. As noted above, in her original complaint Plaintiff had identified the proper standard of review as arbitrary and capricious, which is a standard very deferential to the plan administrator or its designee, in this case, Hartford. Now Plaintiff wants to amend the complaint to retract that assertion and replace it with an allegation that the arbitrary-and-capricious standard does not apply. The proposed amendment is based on documents pertaining to a policy issued by CNA (whose business Hartford acquired) provided by defense counsel on September 11, 2013. Plaintiff alleges that although some of these documents, including the certificate of insurance, purport to give the plan administrator the discretionary authority to make eligibility determinations, these documents are not part of the ERISA plan.

### A. Prejudice

The Defendants argue that the motion to amend is too late because they would be prejudiced if they had to conform their efforts and arguments to a new legal standard. They cite the fact that they have already conducted discovery and legal research, and prepared for a Rule 16 conference. But nowhere do they explain why simply changing a standard of review from deferential to *de novo* would result in significant prejudice or wasted resources or efforts. The same questions will be addressed about Plaintiff's alleged disability regardless of the standard, and the motions to compel would have been filed either way. It is perhaps true that the motions to compel would not have been filed if everyone agreed that the standard of review was *de novo*, but it is apparent from the present

8

filings that the Defendants would not have agreed to *de novo* review in any event. Given Rule 15's liberal allowance of amended pleadings, and given the inherently confusing nature of the Defendant's plan documents (discussed below), the delay here was understandable and would not warrant denying an amendment.

**B. Futility**

The Defendants also oppose the amendment on the basis that the deferential standard of review is the correct one, meaning that the proposed amendment would be futile. A district court may refuse to allow a complaint to be amended if amendment would be futile, such as where a proposed amended complaint could not survive a motion to dismiss. *Arlin–Golf, LLC v. Vill. of Arlington Heights*, 631 F.3d 818, 823 (7th Cir. 2011). Plaintiff's motion for leave to amend is actually a vehicle by which she seeks to challenge the defendants' assertion that the plan is subject to the arbitrary and capricious standard of judicial review. If the court is able to determine on the record before it that the arbitrary and capricious standard applies, the motion for leave to amend should be denied.

The default standard of review in an ERISA case is *de novo*. In order to alter this default standard, the "stipulation [for deferential review] must be clear." *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 332 (7th Cir. 2000). In this case, the question turns on whether certain documents constitute part of the ERISA "plan." Depending on the circumstances, the "plan" may constitute the underlying insurance policy itself, as well as other documents that are incorporated into the plan. Here, it is agreed that what the parties have denominated the policy does not contain any language granting discretionary authority to the plan administrator. Instead, the language containing the discretionary grant is found in two places within the certificate of insurance. The central question,

9

therefore, is whether these two statements within the certificate of insurance are within a part of the plan itself, or whether they are extra-plan statements.

First, the summary plan description (SPD), which appears to be incorporated into the certificate of insurance, tells the insured that the administrator has discretionary authority to interpret the terms of the plan. (ECF No. 26-4 at 21.) The second statement purporting to grant discretionary authority arises on the final page of the certificate of insurance. Under the heading "DISCRETIONARY AUTHORITY," the certificate states that "the plan administrator and other plan fiduciaries have discretionary authority to determine Your eligibility for an entitlement to benefits under the Policy." (ECF No. 34-1 at 2.)

Plaintiff points out, however that the SPD itself states that it "does not constitute a part of the Plan, nor of any insurance policy issued in connection with it." (*Id.*) And the certificate of insurance states that "[t]his certificate, however, is not the Policy. It is merely evidence of insurance provided under the Policy." Thus, Plaintiff argues that the absence of such a provision in the policy controls, and this court's review is de novo. Plaintiff cites *Sperandeo v. Lorillard Tobacco Co., Inc.,* 460 F.3d 866 (7th Cir. 2006), as support for her contention. There, the discretionary language (also in a CNA certificate) was found within the SPD and the certificate of insurance, but the Seventh Circuit refused to apply that language based on the same language found in the certificate here. (ECF No. 26-4 at 1.) The court concluded:

> On the record before us, then, the basic plan document, the policy, contains no indication that CNA, as the plan administrator, has authority to exercise the sort of discretion that would justify the deferential judicial review . . . Two other documents, the Certificate and the SPD, do contain language conferring discretion on CNA, but these two documents are not incorporated by reference into the policy or plan. Indeed, the terms of both documents make clear that they are not so incorporated.

10

460 F.3d at 871. Likewise, in *Schwartz v. Prudential Ins. Co. of America*, 450 F.3d 697 (7th Cir. 2006), the court found that the de novo standard applied even though the summary plan description (SPD) clearly granted the administrator discretion in making benefit determinations. The court concluded that the SPD was in conflict with the plan, which did not grant such discretion, and under such circumstances, the language of the plan controlled. *Id.* at 699 (citing *Health Cost Controls of Illinois, Inc. v. Washington*, 187 F.3d 703, 711 (7th Cir.1999)). Plaintiff argues that the same conclusion follows here.

The defendants, on the other hand, argue that the issue is controlled by *Shyman v. Unum Life Ins. Co.*, 427 F.3d 452, 455 (7th Cir.2005), and *Ruiz v. Cont'l Cas. Co.*, 400 F.3d 986, 991 (7th Cir.2005). In *Shyman* the plaintiff argued that the language giving the plan administrator discretion did not count because, while it appeared in the certificate of insurance, it did not appear in the body of the policy. The court rejected the plaintiff's argument in language that the defendants argue applies here as well:

> [T]his package of documents declares that the certificate of insurance is part of the policy, unless it contradicts some other clause-and Shyman does not contend that the discretion-granting language contradicts either the summary plan description or any clause of any other document. It is unimportant that one document is captioned "certificate" and another bears the legend "policy;" if the discretion-granting language can be on any page of a multi-page plan (and it can), then the fact that this page bears its own caption is irrelevant. Shyman does not contend that a beneficiary who inquired (or looked for himself) would not have discovered the discretion-granting language. A clause that not only represents the plan sponsor's decision but also communicates the rules to the participants and beneficiaries is enforceable under ERISA.

427 F.3d at 455. Similarly, in *Ruiz* the court held that the deferential standard of review applied based on the language of the certificate of insurance issued with the policy. 400 F.3d at 991 (holding that both "the insurance policy and the Certificate are plan documents").

11

This case arguably differs from *Sperandeo* and *Schwartz* in several respects. First, the policy in this case contains no grant of coverage or definitions that would allow one to determine the conditions under which benefits are to be paid or the amount of the benefit. The policy consists of a mere seven pages, including Thrivent's master application for the policy, that sets forth the effective date of the policy, methods for calculation and payment of the premium, a premium guarantee provision, a termination provision, a privacy policy and several "additional provisions." (ECF No. 26-2 at THRIVENT 000005-12.) In the "additional provisions" section, the policy states: "We will deliver certificates of insurance to the Employer for issuance to each insured Employee. The certificates will describe the benefits, to whom they are payable, the Policy limitations and where the Policy may be inspected." (ECF No. 26-2 at TRIVENT000008.) The certificate of insurance then contains the grant of coverage and the various provisions that define disability and indicate the conditions under which benefits will be paid and the amount of benefits. (ECF No 26-4.) In other words, although the policy is not the certificate, the policy expressly incorporates the certificate as the basic plan document. Unless the certificate of insurance is considered, there is no disability plan.

This case also differs from *Sperandeo* in that the certificate is explicitly identified as part of the agreement with the employee. The certificate states: "The Policy, the Employer's application, the employee's certificate of coverage, and Your application, if any, and any other attached papers, form the entire contract between the parties." (ECF No. 26-4 at 17.) Thus, although the certificate of insurance is distinct from the policy, it is incorporated into the policy and forms part of the plan. In this respect, the case is more like *Shyman v. Unum Life Ins. Co.*, 427 F.3d 452, 455 (7th Cir. 2005), and *Ruiz v. Cont'l Cas. Co.*, 400 F.3d 986, 991 (7th Cir. 2005), than *Sperandeo*.

12

On the other hand, both sections that purport to grant discretion over benefit determinations to the administrator appear in the certificate following the heading "**SUMMARY PLAN DESCRIPTION AND (SPD) AND ERISA STATEMENT OF RIGHTS**." (ECF No. 26-4 at 21) (capitalization and bold in original). Immediately under the heading appears the following language:

> The following sections contain information provided to You by the Plan Administrator of Your Plan to meet the requirements of the Employee Retirement Income Security Act of 1974, as amended. It does not constitute a part of the Plan, nor of any insurance policy issued in connection with it. All inquiries related to the following material should be referred directly to Your Plan Administrator.

(*Id.*) In other words, both purported grants of discretion appear to be located in sections of the certificate that the insurer explicitly denies are part of the plan and the insurance policy issued to accomplish its purpose. (ECF No. 26-4 at 21, ECF No. 34-1 at 2.)

This, of course, makes no sense. It appears as if the insurer simply went through its files and stapled together a collection of forms that seemed like they might apply without taking the time to read through the entire document to see if it set out the policy/plan it intended to offer. Why an insurer issuing a document as important as a group disability policy would operate in such a sloppy manner is baffling to courts called upon to resolve the lawsuits that inevitably arise. Surprisingly, it is not unusual. *See Health Cost Controls of Ill., Inc. v. Washington,* 187 F.3d 703, 712 (7th Cir. 1999) ("This kind of confusion is all too common in ERISA land; often the terms of an ERISA plan must be inferred from a series of documents none clearly labeled as 'the plan.'"). In any event, the clear teaching of *Sperandeo* is that where the language granting the plan administrator discretion over benefit determinations is contained only in documents that are explicitly not part of the plan or policy, it is not operative and the proper standard of review is de novo. 460 F.3d at 872.

13

It follows that Plaintiff's proposed amendment is far from futile. Indeed, it would appear from the foregoing discussion that the allegations of the proposed new complaint are correct and Plaintiff is entitled to de novo review of the termination of benefits. Because Plaintiff has moved only for leave to amend her complaint and because the plan documents, even now, remain somewhat unclear, the court will refrain from a final determination of the issue at this time. The motion for leave to amend, however, will be granted.

### III. Conclusion

The motions to compel are **DENIED** without prejudice. The motion to amend is **GRANTED**. The proposed amended complaint attached to ECF No. 26 will be docketed as the amended complaint. The clerk is directed to set this matter on the court's calendar for a status conference to address further proceedings. The parties may appear by telephone.

**SO ORDERED** this   27th   day of December, 2013.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
